UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Joshua Curcuro, | |
| *Plaintiff,* | No. 25 CV 15432 |
| v. | Judge Lindsay C. Jenkins |
| Gronemann Pizza, Inc., *et al.*, | |
| *Defendants.* | |

MEMORANDUM OPINION AND ORDER

Joshua Curcuro filed this lawsuit against his former employer, Gronemann Pizza, Inc. and Dough Management, Inc. as well as their President James Gronemann, alleging wage act claims under the Fair Labor Standards Act, and Illinois and Indiana State law. [Dkt. 1.] After Defendants appeared in the case, they filed a motion to compel arbitration, arguing that Curcuro signed Gronemann Pizza's Arbitration Agreement, which mandates arbitration of the claims raised by this case. [Dkt. 20 at 1-2.]

Curcuro responded to the motion by alleging that he never agreed to arbitration. In support, he submitted a declaration stating, among other things, that he participated in the onboarding process and an orientation meeting where he was given documents to sign, but that he was "not given any documents regarding arbitration" and that he "never signed any arbitration agreement, whether electronically or in paper form." [Dkt. 24-1, ¶¶ 5, 6.] He also explains that after a brief separation, he was rehired by Defendants in April 2025, but was not presented with any arbitration agreement documents at the time of rehiring. [*Id.*, ¶¶ 16-17.]

Section 9 of the Federal Arbitration Act envisions a limited role for federal courts faced with a petition for an order confirming an arbitration award—"the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11" of the Act. 9 U.S.C. § 9. "Confirmation is usually routine or summary, and a court will set aside an arbitration award only in very unusual circumstances." *Bartlit Beck LLP v. Okada*, 25 F.4th 519, 522 (7th Cir. 2022) (quoting *Standard Sec. Life Ins. Co. of N.Y. v. FCE Benefit Adm'rs, Inc.*, 967 F.3d 667, 671 (7th Cir. 2020)).

But arbitration is "strictly 'a matter of consent.'" *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). So a court cannot confirm an arbitration award if the parties did not agree to arbitrate the dispute. See 9 U.S.C.

1

§ 9 (If the parties *in their agreement have agreed* that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award...") (emphasis added). And whether an agreement to arbitrate exists is a question for courts, not arbitrators. See *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 941–45 (1995) (explaining that courts, not arbitrators, decide whether a dispute is subject to arbitration before confirming an arbitration award unless the parties clearly and unmistakably agreed to have an arbitrator decide questions of arbitrability).

The FAA does not expressly identify the evidentiary standard a party opposing arbitration must meet before the making of an arbitration agreement is "in issue" within the meaning of the statute. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). Like most circuits, however, the Seventh Circuit applies the standard applicable to motions for summary judgment under Federal Rule of Civil Procedure 56. *Rose v. Mercedes-Benz USA LLC,* 167 F.4th 975, 978 (7th Cir. 2026). To avoid compelled arbitration, then, a party denying the existence of an arbitration agreement must demonstrate that a genuine issue of material fact warranting a trial exists. This requires more than a general denial of "the facts upon which the right to arbitration rests; the party must identify *specific evidence* in the record demonstrating a material factual dispute for trial." *Id.* (emphasis in original).

A party's sworn statement that he did not sign an arbitration agreement—if spelled out in sufficient detail—is sufficient to create a genuine issue of fact necessitating a trial. *Boykin v. Fam. Dollar Stores of Mich., LLC,* 3 F.4th 832, 839-841 (6th Cir. 2021) (employee's affidavit created a factual dispute over whether employee authorized the arbitration contract); *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 50–51 (2d Cir. 2022); *Camara v. Mastro's Rests., LLC*, 952 F.3d 372, 374–75 (D.C. Cir. 2020); *Kirleis v. Dickie McCamey & Chilcote, P.C.*, 560 F.3d 156, 161–62 (3d Cir. 2009).

*Barrows*, which bears a strong resemblance to this case, is instructive. In *Barrows*, a former employee sued a restaurant under the Fair Labor Standards Act and state labor laws. 36 F.4th at 47 n.2. The defendant restaurant moved to compel arbitration based on an arbitration agreement the employee allegedly signed electronically as a part of the restaurant's "onboarding process." *Id.* at 47–48.

As here, the restaurant attached to its motion several affidavits describing the onboarding process. *Id.* In those affidavits, company officials explained that new employees were required to agree to a number of documents, including several arbitration agreements, through the restaurant's password-protected intranet. *Id.* It also produced (1) a copy of an arbitration agreement purportedly bearing the plaintiff's electronic signature, (2) "timesheets show[ing] that [the employee] was working at the restaurant on the day the electronic signatures were affixed to the

2

[agreement]," and (3) evidence that the restaurant "was the owner of the IP address of the computer on which the arbitration agreements . . . were completed." *Id.*

In the face of such compelling evidence, the employee filed a sworn declaration, in which she "adamantly, and categorically, denied having electronically signed any arbitration agreement." *Id.* at 49. She denied completing any electronic paperwork during her initial hiring, seeing or signing the arbitration agreements, using any of her employer's computers at the restaurant for any purpose, and owning or living in a house with a computer while employed by the restaurant. *Id.*

The district court granted the restaurant's motion to compel and dismissed the case, "discount[ing] the evidentiary value of [the] sworn declaration," because the employee did not produce additional evidence substantiating her denials. *Id.* at 50. The Second Circuit reversed. Observing that "'[t]here is nothing . . . to suggest that nonmovants' affidavits alone cannot—as a matter of law—suffice to defend against'" a motion to compel arbitration, it held that the employee's affidavit was more than sufficient to create a genuine issue of fact necessitating a trial under section 4 of the FAA. *Id.* at 50–51 (quoting *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 57 (2d Cir. 1998)). The Court emphasized what the employee's affidavit did *not* allege—that "she [could not] *recall* signing [the] agreement (as opposed to *denying* she has done so) . . . ." *Id.* at 51 (emphasis original).

Defendants' reply brief argues that Curcuro's "self-serving affidavit and convenient memory lapse cannot defeat his obligation to arbitrate pursuant to the Arbitration Agreement." [Dkt. 25 at 7.] But Curcuro's declaration does not suggest a memory lapse; he offers an "unequivocal denial" in an admissible form. *Boykin,* 3 F.4th at 839–40. His declaration states that he never signed the Arbitration Agreement. [Dkt. 24-1, ¶ 6.] And the Seventh Circuit in *Tinder* implicitly recognized the distinction drawn by *Boykin* and *Barrows* when it held that an affidavit asserting only that the employee did not remember a fact did not raise a genuine issue of material fact. *Tinder*, 305 F.3d at 735–36.

The court is persuaded that, at the very least, Curcuro likely has created a genuine dispute of material fact as to the existence of the arbitration agreement. A definitive ruling on the issue, however, would be premature. Courts, including this one, have recognized the imprudence of making a finding that an arbitration agreement exists without allowing the party opposing such finding a chance to conduct discovery on the issue. See *Boykin*, 3 F.4th at 841 ("Courts have recognized that a party who adequately puts the formation of an arbitration contract in issue may request discovery on that contract-formation question."); *Bradley v. Meijer Stores L.P.*, 2023 WL 3042984, at *5 (N.D. Ill. Apr. 21, 2023) (denying a petition to compel arbitration and allowing discovery when a party placed the making of an arbitration agreement "in issue" by asserting, in an unsworn statement, that he did not sign an arbitration agreement).

Discovery will also allow Defendants the opportunity to challenge the denial. If, during discovery, information comes to light undermining the denial as a matter of law, Defendants can renew their motion to compel and identify the evidence in the record they believe eliminates the need for a trial.

## IV.  Conclusion

Because the court may only order arbitration after a finding that the parties indeed agreed to arbitrate the dispute, the court defers ruling on the petition pending limited discovery. It will first allow limited discovery on the existence of an agreement to arbitrate. Once that discovery is complete, it will schedule a trial, if necessary, which may proceed as either a bench or a jury trial. 9 U.S.C. § 4.[1]

Enter: 25-cv-15432
Date: March 23, 2026

_____

Lindsay C. Jenkins

---

[1]     Section 4 provides in part: "[i]f the making of the arbitration agreement … [is] in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default … the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may … demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure…." 9 U.S.C. § 4.

4